Case number 226026, Brian Boyd v. Joseph Martinez et al. Oral argument not to exceed 15 minutes per side. Mr. Robertson for the appellant. May it please the court, Philip Robertson, I'm here for the appellant. Mr. Martinez and Tech, I would reserve 5 minutes if I might. All right. Are you all ready? Don't wait on us. We're waiting to hear your voice. All right. That sounds good. We're here on an order on summary judgment. There are cross motions for summary judgment. Also, a motion to dismiss or to essentially hold an abeyance abstention rather from under the Colorado River Doctrine. This case originates out of Williamson County Chancery Court. It's a malpractice case between my clients and their attorney, Mr. Brian Boyd. That case, after pending for approximately 3 years, and it's indeed still pending, was then, I guess, brought into or confabulated with this case, which was a separate action that was brought by Mr. Boyd to essentially make an end run around that Williamson County malpractice litigation. And what he did at that point is he filed a separate action in Davidson County Chancery Court. That action was then removed based on diversity jurisdiction. But he filed that action essentially seeking a determination that a third party settlement agreement released him from the malpractice action that was pending in and is pending in Williamson County Chancery Court. And what's impermissible about that is several grounds. First, essentially you have complete parallelism, and the court even found that. So you have complete parallelism under the Colorado River Doctrine. You have these claims that are essentially made in the Davidson County and then federal lawsuit for declaratory judgment to seek that he was released. Those are the same issues that are present in the Williamson County case. There was a motion to dismiss filed by Mr. Boyd on those grounds in which he sought attorney's fees. And in fact, those attorney's fees request was denied by the Chancellor in Williamson County. And then he amended his answer to present the exact same defense, the same issue, that there was a release based on this third party agreement. And then he filed a motion for judgment on the pleadings on that same issue. And prior to that being set and heard, he filed then this action in Davidson County asking for the exact same relief, for a declaration that in fact these malpractice claims could not be sustained against him in Williamson County because he was released by the terms of a third party agreement to which he was not a party. And so the court in looking at that, and I'll address the first issue that we brought up in the case, or that my client brought up in the case, which was a motion to dismiss and a motion to stay essentially under the Colorado River Doctrine. The court found parallelism. Really the only issue that the court found to, I guess, cause it not to invoke the Colorado River Doctrine was a misconception that they claim, first of all, that the attorney's fees was a stand-alone claim, and that it could only be brought in Davidson County, Tennessee under the third party settlement agreement. Now that begs the question first whether there's standing for Mr. Boyd, who's not named in the agreement, to enforce the agreement. It also raises the issue of whether or not he could receive that relief in the Williamson County Court, which he could. And we've cited exhaustive case law, and in fact you can look back at the record from the Williamson County Court, which is set forth, I believe the order is in the removal papers, where the court in fact took up his request for attorney's fees in regard to a motion to dismiss and denied them. The court didn't say, I can't hear this. The court denied them. And so you have the court, federal court, erroneously determining that for some reason these are affirmative claims for a declaratory judgment, when in reality they're already being litigated in the Williamson County Court as an affirmative defense. And you also have the court finding that the attorney's fee cannot, or claim for attorney's fees, which the court ultimately denied, but finding that that somehow justifies and requires that a separate action wholly apart from the Williamson County malpractice action. And for that reason, we believe that the court abused its discretion and should have held the case in abeyance under the Colorado Doctrine. We also believe that the court should have dismissed the case for lack of standing and for claim splitting. Because essentially you have that same issue. Everything at issue in the Williamson County Court case will take care of and resolve what was at issue in front of the trial court. Those sole issues are, is there a release, which is an affirmative defense, and although couched as a declaratory judgment, and if he's a prevailing party, if Mr. Boyd prevails, is he entitled to attorney's fees? And so for that reason, you have not only the issues under the Colorado River Doctrine, you've got an impermissible claim splitting. If those are, in fact, affirmative claims, they're compulsory counterclaims. Mr. Robertson, because the action at issue here requests a declaratory judgment in federal court, aren't we governed by the Declaratory Judgment Act rather than the Colorado River Doctrine? Well, Your Honor, I don't know that that makes a difference. Aren't the factors different? I mean, if we analyze it under the Declaratory Judgment Act? Your Honor, I don't know the answer to that, and I apologize. Okay. I mean, my notes indicate that, I guess it was Wilton v. Seven Falls Company, 1995 Supreme Court case, which is pretty similar to this, says that when a declaratory judgment is requested, the factors under the Declaratory Judgment Act prevail, or are applied, rather than Colorado River. Anyway, are you prepared to argue that? No, Your Honor, I'm not prepared to argue the Declaratory Judgment Act at this point. I don't believe that it necessarily is dispositive, though. Even if you don't look at the Colorado River Act, you've got the fact that there's a standing issue from the standpoint of whether or not he can enforce the agreement, and that's a whole other issue. Let's assume that there is, because the courts essentially relied on the claim for attorney's fees and said that that was encompassed by the settlement agreement, and that the settlement agreement contains a mandatory venue selection clause that requires that any actions that go to the release or the settlement agreement must be brought in the courts of Davidson County. The issue is that, number one, this case, the malpractice case in Chantry Court, it was brought before that settlement agreement, several months before that settlement agreement was entered into. Number two, you've got three years that it was litigated before this issue was brought up. So even if you have a venue selection clause, and I'm going to get to why that's not actually even enforceable in this case, between these parties, you have waiver. And with regard to the actual clause itself, it's clear that if you look at the agreement, it applies to the parties as they are a defined term. And Mr. Boyd is not one of the parties as they are a defined term. Additionally, Tennessee law, and I believe Sixth Circuit has also indicated that third-party intended beneficiaries, which he is not, but assuming that he was, are not bound by venue selection clauses. Okay, if we were to get by the jurisdictional and venue issues and get to the merits of it, what is your argument? This release is a broad release. I mean, it releases like everybody in the world almost, but it includes past attorneys. And why wouldn't the terms, expressed terms of this release, apply to Mr. Boyd? They do not apply to Mr. Boyd for numerous reasons, Your Honor. Number one, there's a two-prong approach that the court must use, and it was not used by the trial court. And I know you're reviewing de novo, so I'm not going to belabor what the trial court found. But there's a two-prong approach. First, you look at the language. Regardless of what the language says, whether it's clear or not, you also then have to address the surrounding circumstances. If you look at the language Even if the release is unambiguous, you've got to consider extrinsic evidence, is that right? Absolutely, Your Honor. We've cited that in there's a tremendous amount of case law in that, including cases out of the Sixth Circuit, but also obviously Tennessee cases that say that you've got to do that. But in this instance Well, wait a minute. That would be if there was some sort of fraud or untoward conduct that we would have to consider extrinsic evidence. Don't you agree? No, Your Honor, I don't agree. I would say, and I'll get to this provisions, the cases that we cited in there are very clear that it's a two-prong approach, and it's not based on whether or not there's fraud. It's based on simply when you have a settlement agreement and release, the court has to look at the terms and it has to consider the surrounding circumstances. Even if there's no ambiguity as to the terms of the release? Absolutely. And I would say that even looking at the terms of this agree, excuse me, looking at the terms of this What is the best case you have in Tennessee for that?  Is this the Judge Reeves case that you cite? Yes, I believe that it is. I apologize. I also cited a case out of bankruptcy court, and I know that it's out of bankruptcy court, but it's really right on point on this, and it looks at the extrinsic evidence as well. But the terms are clear that Mr. Martinez was not releasing his own lawyer, and that's the hinge here. There's also the carve-out in there for pending litigation. There's also the fact that you have a list of litigation that's going to be resolved, and the parties did not include the malpractice, which was pending litigation. And so for those reasons, I believe Doesn't that cut against you? I'm sorry. Well, I know you're out of town, so I'm out of time, but doesn't that really cut against you, the fact that there are these carve-outs that you're being directed to dismiss these cases, including, you know, the arbitration case? The parties clearly knew how to carve-out if you were going to allow something to continue to move forward, but the case, again, that case was not carved-out. And, you know, to my colleague's point, this release is very, very general and releases attorneys past and present. Well, if the attorney, and I'm sorry, am I allowed to respond to this? Yes, you can. Okay. You can always respond. Okay. Thank you. With all due respect, the parties found that it was important to list what litigation was going to be dismissed. The parties were aware, this is in the record, the parties were aware of the malpractice action. It was pending. They did not include that list. It is also imperative to note that under no circumstances can you read that release to be a release by a party that's making the release of its own lawyer. And Mr. Boyd represented both Mr. Martinez. He also, at one point in time, represented the others. So you have situations where these are claims brought by Mr. Martinez against his own lawyer. They're not claims brought against Mr. Boyd, essentially, that are derivative for which the releasing parties, the other parties, could be found liable. These are separate and apart claims that Mr. Martinez had against his former lawyer that are not encompassed in this settlement agreement. And if the parties intended to cause that to be released, they didn't need to list litigation. If you say that the release itself governs, what's the point of listing the litigation that's going to be dismissed? The parties all knew what litigation was pending. They chose to dismiss those two. It went on for several years. The other side, and then nobody has dismissed it, and nobody sought dismissal of it except for Mr. Boyd after several years. Thank you. All right. Have your rebuttal time. Thank you. Good morning. Jim Bowen for the appellees. I'm going to start where Mr. Robertson, I think, ended, which is, and to your honor's question, the scope of this release. The scope was incredibly broad. And to what Mr. Robertson was saying, I think the facts here are important. There was a claim, an original claim, by the appellant against a company called 3D and the appellant's brother, Chris Martinez, over a failed business venture. The appellant sued, saying the defendants in that case had engaged in tortious conduct of various sorts that destroyed the value of his investment, kicked him out of the company improperly, and he lost $6 million. One of the allegations in that claim was that the defendants were using Mr. Boyd, the appellee in this case, the lawyer for both sides, they alleged, as basically the conduit to do bad things. That he purported to represent the appellants, but in fact he was taking actions and engaging in conduct and sending letters and doing things that caused the appellant to lose their investment. That was the allegation. Through your attorney, Mr. Boyd, you engaged in tortious conduct and we lost money. They then filed a separate lawsuit against Mr. Boyd six months later with the exact same allegation. You engage in malpractice by doing the things we alleged in the prior lawsuit, which caused me to lose my investment, among other damages. So we have the same damage, the same cause, the same claims, two different lawsuits. They ultimately settle the first lawsuit, the appellants and the original defendants, and we get the mutual release agreement that's the subject of this case. And I want to focus on the subject of that because it matters. In that case, to your Honor's point, the parties agreed because there were two parties, two direct signatories to this agreement, the defendant and the plaintiff in the original case. And they agreed that they would dismiss that case. That's paragraph five. And then they agreed in paragraph six, and by the way, we are going to then also dismiss any other claims either of us has against the other or against the other's attorneys or against anyone who acted on behalf of the other. So anyone through, we're releasing you and your attorneys and anyone else who acted on your behalf. Anywhere in the universe, they add that at the end, any claims of any kind prior to this day, throughout the universe. Throughout the universe is an odd term. You don't usually see it in a general release like that. Why do you see that? Because the point is, in not so many words, what they're saying is, this is as broad a release as you can have. And how do we know that? Because in paragraph seven, the next paragraph, they say, we're doing this for the purpose of making peace and avoiding litigation. If this claim survives, if this claim against that we're here today, the second filed claim, which alleges the same allegations just against the attorney, they're alleging the first lawsuit, you don't get peace and you don't avoid litigation. You're litigating literally the exact same claims, the exact same damages, the exact same discovery, and so it would contradict the express intent of this release. And, to your point, your honor, in paragraph six, the first sentence, they carve out claims. This release applies to any claims except obligations created under this agreement. So right there, in paragraph six, they have an exception. They know how to accept claims. They know how to create a carve out. And had these parties created a carve out for the pending malpractice litigation against Brian Boyd, we wouldn't be here. But if you take this release as written, where the parties specify we're releasing this specific lawsuit in paragraph five, and in paragraph six, we're releasing any other claims that either of us have against each other or against the attorneys, and you take it that our whole desire is to make peace and avoid litigation, there's no way to read this release other than it encompasses the lawsuit pending against Mr. Boyd. And that's what the district court found. Now, I hate to jump around, but Mr. Robertson spent much of his argument on this jurisdictional issue. And his argument is effectively that Mr. Boyd has split his claims, that he's engaged in procedural maneuvering and various type of strategery, if you will, in an effort to avoid one court and get in another. What Mr. Robertson never pointed you to, and is important, is paragraph 15 of the release, in which the appellant, not Mr. Boyd, the appellant, that if any action is instituted to enforce, interpret, or evade the terms of this agreement, it shall be filed exclusively in federal or state court in Davidson County, Tennessee. The appellant had a lawsuit, he was selling a lawsuit in Williamson County, Tennessee. He chose to enter into a release agreement that could only be enforced, interpreted in a different court. And this is what the district court found below in terms of this claim splitting and this Colorado River Doctrine. It doesn't apply when the plaintiff or one of the parties agrees that the claims need to be split. It may not be efficient. It may not be the easiest way to have done it. But it's what appellant agreed to. And the agreement requires, and it gave exclusive jurisdiction to this court, the federal district court in Nashville, Tennessee, to interpret. Now, Mr. Appellant's argue, and he mentioned it briefly towards the end of his argument, that somehow you can imply or find, or there's case law that finds that a release like this that's broad in its terms can somehow be, is somehow more narrow. And respectfully, your honors, that's not the case. But before that, he also ordered that somehow, well, let me phrase this differently. The law in Tennessee is the same as the law in most states. This is a contract. The contract is interpreted as written. We discern intent from the language of the contract. The language controls. Appellants are arguing that somehow facts and circumstances can change this. And I think, and your honors are asking, well, isn't that only in the case of fraud? And I think the answer is sort of nuanced. You can always, language is never interpreted in a vacuum. So facts and circumstances can always be used to inform an interpretation. It can't be used to change the language of the agreement. You can't use extrinsic evidence of facts and circumstances or pre-contract negotiations to change terms of an agreement. That's the parole evidence rule. You can always, of course, use facts and circumstances to help inform and interpret language. Here, the facts and circumstances that appellants rely on is they say, well, they offered two at the district court. One, they put an affidavit that said, from the appellant, that said, I didn't subjectively intend to release Mr. Boyd. Notwithstanding language, I didn't mean to do that. The Dreyfus case found, says, and that's a Tennessee law that's in our briefs, says you can't have subjective, knowledge of subjective intent, I didn't mean what I said, is insufficient under Tennessee law to change or alter a contract. You can't create an issue of fact on interpretation by putting in an affidavit that said, I didn't mean what I said. You also can't do it through your own subjective conduct. Their other argument is, well, after we entered this release, we kept litigating against Mr. Boyd. We didn't release our claim. We didn't dismiss our claim. We kept going. And they cite the Apria case for that. Well, the Apria case is helpful because what that case does is you had a father and a son who were in a fire. Their house burned down. And it was caused by some improperly stored oxygen. And so the son who survived sued a number of companies who helped make and store and create the oxygen. Basically a product liability suit. Multiple defendants. They entered into a settlement agreement with one defendant, kept litigating. Then a second kept litigating. Then a third kept litigating. The only defendant left is a company called Apria who stored the oxygen. And Apria comes in at that point and they say, hey, we didn't, we didn't, this release is so broad, it releases us. And the Court of Appeals in that case said, well, wait a second, that doesn't really square. Because in that case, all the parties, if the release, sorry, Apria moved to dismiss on the first release that was signed. As I said, there was a series of releases. One, two, three. Apria comes in and says that first release, it's broad enough to include all the defendants. And so we should be dismissed. And the court said, well, wait a second. When you read the language of this and you look at it in the context of what's happening here, it doesn't make any sense that all these parties, these defendants would continue to litigate had they been released under this first release. If the language is as broad as you say, there wouldn't have been a second release and a third release. Point being, they found objective evidence that helped create an issue of fact on language that was more narrow than this. And they found that kind of objective facts and circumstances can perhaps create an issue of fact. Here we don't have any objective facts and circumstances. We have the plaintiff saying, I continue to litigate. In effect, my own breach of the release, my own ignoring my obligations, creates an issue of fact as to whether, as to what its language says. So please don't interpret the language as written. Look to my own subjective conduct. It's no different than putting in an affidavit. You can't use your own breach to change the language of the contract. And so what we look to is the language of the contract. And plaintiffs are looking really hard and they're making arguments, I understand, to say that this language isn't as broad as it is, but candidly it is. The parties agreed that their intent was to make peace. They agreed to a release that was against anybody and everybody, against the others and anybody who acted on their behalf across the universe. They agreed at the beginning of their agreement that the point of this was to resolve all differences between them. They created exceptions for case four, but did not include an exception here. So we know they know how to create an exception had they wanted. And so all the plaintiffs resort to is, well, there's a confidentiality clause that says that if this agreement's confidential, but if you ever get a subpoena in a legal proceeding, then you can't rely on this confidentiality provision. Well, that's a standard term, right, that you say we have confidentiality, but if there's legal process occurs, you've got to comply with that. I don't see how there's no reasonable argument there that somehow that's an implicit carve-out for the malpractice litigation. Similarly, there's a non-disparagement that says if these parties ever have a claim that's not been released here and they're engaged in litigation, that the non-disparagement doesn't apply. If they need to say bad things about each other, they can. Again, that tells us nothing about the malpractice case. At the end of the day, we get to the fundamental point that when the appellant entered into this agreement, he'd sued Mr. Boyd, he knew about this litigation, this litigation was pending, and notwithstanding that, he entered into an incredibly broad agreement that explicitly specified all claims against my former attorney are released. Finally, he claims that I'm not releasing my claims against the defendants of the appellee's attorneys, he was my attorney. He somehow says, well, I just released my claims against the other side's attorneys, not my attorneys. But that doesn't work. The allegation is that he was attorneys for both. You can't have, he doesn't have a claim absent the attorney represented both of them. So you can't split it by saying, well, I released the claims against the appellee's attorneys, but not my attorneys, I'm only suing my attorney. The whole allegation in both cases is that Mr. Boyd represented both parties. You can't have one without the other. The essence of the claim is, the claim he was releasing, is exactly this one, that Mr. Boyd represented the defendant in that lawsuit, represented him at the same time, and in violation of his duties of care, engaged in conduct to harm the appellant. Absent any questions, Your Honor, I'm going to sit down. I am done. Thank you. Any rebuttal? Yes, Your Honor. My co-counsel pointed out that this would probably be a declaratory judgment under state law, so I don't know how that applies because it was brought in Davidson County and then just removed here. I don't know whether that changes anything. I don't believe that it does. I don't want to belabor that point, but just a point to make. Your Honor asked me, Your Honor has asked me about case law relating to the two-prong approach. The Priva case, obviously, is one, but the case by Judge Reeves is the other. We cite that, and it's clear. This requires a two-step approach, and that is in determining what a release entails. You know, the big issue here is you don't have a named party. You don't have somebody who's a party in this at all. The state court case, by the way, is the Petras case, and that actually says the same thing, that the scope is to be determined by what's expressed in the instrument, but also what is within the contemplation of the parties at the time of the execution of the release, which in turn is to be resolved in light of all the surrounding facts and circumstances under which the parties acted. I think it's instructive that this is dispositive that this malpractice case was pending before this release was executed and that that litigation continued on. It was litigation that the other parties were aware of. It was litigation that the parties to the settlement agreement chose not to list in litigation that they specifically chose to have dismissed. There's a lot of talk about making peace and somehow that essentially, I believe, Mr. Boyd's point is that, you know, this settlement agreement was intended to benefit him directly. If you look at the settlement agreement, it states that it's to make peace between the parties, to resolve claims between them. You then have, again, the fact that the parties are aware of these claims, and even if you look at then the terms of the agreement, you have where they've chosen to specify lawsuits to be dismissed. The fact that they didn't specify that lawsuit means it must not have been the party's agreement to dismiss it. You have a release that applies to attorneys, but clearly what that's applying to is claims for which the party, 3D, Mr. Martinez, Reiser, for which they could be responsible by reason of the acts of their agents and others. And in this case, that's not the same claims. These are totally separate claims. I mean, the argument could be put forth that if Mr. Boyd ran over my client in a car accident, then this release somehow releases him. I think that's frankly absurd, and I don't believe that that is what the party's intent was. And in this case, you have very clear that this was pending before the parties were aware of it. They chose not to require it to be dismissed. They made provisions in there for pending litigation, for pending claims. The fact that this is a broad release would mean that you don't need to put any provision in there while referring to claims that aren't released hereby and communications between the parties. Well, if all claims relating to any interaction between the parties are released, then there could be no other claims that are not released for which subpoenas would be required, for which people would need to get evidence regarding these parties. It's clear to me that if you look at the language of the release, there is no clear intent to release the claims that my client has against his attorney for legal malpractice. Claims which are totally independent. Although you have similar damages, the claim is independent of itself, independent of the acts of those parties. Those parties could not commit malpractice. Those parties could not commit a breach of fiduciary duties that an attorney owes to his clients. And the fact that this settlement agreement was entered into after the fact, when this other litigation was pending and the parties chose not to specify that it needs to be dismissed, I believe is dispositive and can be seen from the clear words of this settlement agreement. Do you have any other questions for me, Your Honor? Apparently not. Thank you. Thank you very much, and the case is submitted.